UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>TREVON ANTONE LUCAS,<br><br>  Defendant. | Case No.:  18cr4224; 21cv937-CAB<br><br>**ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255** |

This matter is before the Court on Petitioner/Defendant Trevon Antone Lucas's motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255. [Doc. No. 119.] The government has filed an opposition to the motion [Doc. No. 123], and the deadline for Petitioner's reply has passed.  Upon review of the motion and opposition, the Court deems it suitable for submission without oral argument.  As explained below, the motion is **DENIED**.

**I.  Background**

Trevon Antone Lucas was charged by Indictment with (1) distribution of fentanyl, resulting in the death of C.A.S., in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and (2) conspiracy to distribute hydrocodone, in violation of 21 U.S.C. § 841(a)(1) and

(b)(1)(C) and 846. [Doc. No. 1.][1] Lucas entered into a plea agreement pursuant to which he agreed to plead guilty to the first charge, and the government agreed to dismiss the remaining charges. [Doc. No. 79.] The plea agreement specified that the crime to which Lucas was pleading guilty carried a maximum penalty of life in prison and a mandatory minimum penalty of 20 years. [*Id.* at 4.] Defendant also represented that he had had a "full opportunity to discuss all the facts and circumstances of this case with defense counsel and ha[d] a clear understanding of the charges and the consequences of this plea" [*Id.* at 5], and that he was satisfied with his counsel's representation [*Id.* at 13].

On April 23, 2019, Lucas pled guilty before Magistrate Judge Barbara Major. During that hearing, Judge Major explained the above maximum and mandatory minimum sentences for the crime to which he was pleading guilty, and Lucas stated that he understood. [Doc. No. 124 at 7-8.] Lucas told Judge Major that he had had enough time with his counsel to discuss the plea agreement before signing it, that his counsel had explained each and every term and condition and answered all of his questions, and that he was satisfied with the representation he had received from his lawyer. [*Id.* at 11.]

Lucas was then sentenced by this Court on October 16, 2019. The pre-sentence report recommended a sentence of 240 months with 20 years of supervised release. [Doc. No. 104 at 13, 22.] The government requested a sentence of 240 months with 5 years of supervised release. [Doc. No. 106 at 9.] Lucas's counsel, Keith Rutman, recommended a sentence of 160 months with 5 years of supervised release in his sentencing summary chart [Doc. No. 112 at 1], and 180 months at the sentencing hearing [Doc. No. 121 at 5]. The Court sentenced Lucas to 180 months with 5 years of supervised release. [Doc. Nos. 113, 114.]

---

[1] All citations to the record are to docket numbers from Case Number 18-cr-4224-CAB.

## II.   Legal Standard

Defendant's motion to vacate his sentence arises under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  Thus, "[u]nder 28 U.S.C. § 2255, a federal court may vacate, set aside, or correct a federal prisoner's sentence if the sentence was imposed in violation of the Constitution or laws of the United States." *United States v. Withers*, 638 F.3d 1055, 1062 (9th Cir. 2011).

## III.   Discussion

In his motion, Lucas contends that he would not have entered into his plea agreement if not for ineffective assistance from his counsel.  "A guilty plea is not knowingly and voluntarily made if it was the result of ineffective assistance of counsel under 'the two-part *Strickland v. Washington* test." *United States v. Silveira*, 997 F.3d 911, 913 (9th Cir. 2021) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56–58 (1985)).  Under *Strickland v. Washington*, "a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Applied to a guilty plea, a defendant must "show (1) that his counsel's advice to plead guilty was not within the range of competence demanded of attorneys in criminal cases; and (2) that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Silveira*, 997 F.3d at 913-14 (internal citations and quotation marks omitted).

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms," and "the performance inquiry must be whether counsel's

assistance was reasonable considering all the circumstances." *Id.* at 688. Judicial scrutiny of defense counsel's performance must be "highly deferential," and a court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . ." *Id.* at 689.

Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Thus,

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Here, Lucas argues that his former counsel was ineffective for four reasons: (1) failure to file a motion to suppress evidence collected from Lucas's cell phone; (2) counsel had a conflict of interest because he also represented Lucas's mother in separate criminal proceedings; (3) counsel did not properly advise him in connection with his plea agreement; and (4) failure to argue mitigating factors at sentencing.

### A. Motion to Suppress

Lucas argues that his counsel was ineffective because he did not move to suppress evidence collected from Lucas's personal mobile phone. [Doc. No. 119 at 4.] Lucas contends the police forced him to unlock his phone with his thumb in violation of his Fourth and Fifth Amendment rights and that the evidence should have been suppressed. [*Id.*] The law concerning the constitutionality of compelled use of biometric information to unlock

mobile phones, however, is far from settled today, and was even more unsettled at the time Lucas was arrested. *See In re Search Warrant No. 5165*, 470 F. Supp. 3d 715, 720, 725-26 (E.D. Ky. 2020) (noting that the question of "what, if anything, is required of the United States under the Fourth Amendment to compel any individual, whether a target or bystander, to provide biometrics incident to the execution of a search warrant for electronic devices . . . is emerging and entirely unsettled," and that "[f]ew courts—none of them federal appellate courts—have addressed" [whether] "the Fifth Amendment's privilege against self-incrimination applies to compulsory biometric authentication."). In light of the lack of clarity in the law, combined with the other evidence against Lucas, Lucas' counsel's decision not to file a motion to suppress evidence taken from Lucas's mobile phone was not unreasonable. *See United States v. Glover*, 872 F.3d 625, 633 (D.C. Cir. 2017) (holding that the inquiry for deficient performance of counsel "looks at performance 'as of the time of counsel's conduct' and accordingly does not require counsel to propound vanguard arguments to meet the bare minimum required by the Sixth Amendment.") (citing *Maryland v. Kulbicki*, 477 U.S. 1, 5 (2015)).

Moreover, even if the decision not to file a motion to suppress was unreasonable, it is highly unlikely that even a successful suppression motion would have resulted in a different outcome here because that evidence was not necessary to the government's case against Lucas. The other evidence against Lucas included evidence from the victim's mobile phone and the fact that when agents used the victim's phone to arrange to purchase drugs from the same person that sold the victim the drugs that resulted in his death, Lucas showed up in response to these messages. In light of the weight of the evidence against Lucas, the suppression of evidence from his mobile phone would not have made the government more willing to offer a more favorable plea agreement to Lucas. Nor is it plausible that Lucas would have decided to proceed to trial if the evidence from his mobile phone had been suppressed. *Cf. Silveira*, 997 F.3d at 916 (affirming district court's denial of § 2255 motion and agreeing with district court's finding that "[i]t simply is not plausible

that facing these consequences, and considering the strength of the Government's case, Silveira would have decided to proceed to trial.")

### B.     Conflict of Interest

Lucas next argues that his counsel was ineffective because he also represented Lucas's mother in a separate criminal matter. Lucas does not identify when or where his counsel was also representing Lucas's mother, or why that representation precluded him from effectively representing Lucas. Regardless, even assuming the truth of Lucas's assertion that his counsel also represented his mother at the same time, there is no ground to find a conflict of interest or that counsel's failure to recuse resulted in ineffective assistance of counsel.

### C.     Advice in Connection with Plea Agreement

Lucas also argues that his counsel did not advise him properly in connection with his plea agreement and repeatedly advised him that he would not be sentenced to more than twelve years in prison. The record, however, directly contradicts these assertions. The plea agreement Lucas signed explicitly stated that he was subject to a 20-year mandatory minimum sentence and that "[a]ny estimate of the probable sentence by defense counsel is not a promise and is **not binding on the Court**." [Doc. No. 79 at 4, 7 (**emphasis** in original).] At his change of plea hearing, Lucas said he had discussed the sentencing guidelines, had read his plea agreement, had discussed it with his counsel, and that his counsel had explained every term and answered all of his questions. [Doc. No. 124 at 7-8, 11.] In light of the record, Lucas's claim that his counsel did not properly advise him in connection with his plea agreement is not plausible.

### D.     Mitigating Factors at Sentencing

Finally, Lucas argues that his counsel was ineffective because he failed to argue mitigating factors to the court at sentencing. The mitigating factors Lucas claims were relevant include that he was a first-time offender, that he was going to college and volunteering as a basketball coach, that he became addicted to drugs after surgery on his hand, and that his brother died shortly before he was arrested. [Doc. No. 119 at 9.] All of

this information, however, had already been presented to the Court in one form or another, and the Court actually took these mitigating factors into consideration when sentencing Lucas. Accordingly, it was not unreasonable for counsel not to repeat these factors orally at the sentencing hearing, and Lucas's sentence would not have been different if his counsel had done so.

### IV. Conclusion

In light of the foregoing, the Court finds that the allegations in Lucas's motion, "when viewed against the record, do not give rise to a claim for relief or are 'palpably incredible or patently frivolous." *Withers*, 638 F.3d at 1063. Accordingly, the motion to vacate, set aside, or correct sentence under 28 U.S.C. §2255 [Doc. No. 119] is **DENIED**. Moreover, because the Court does not believe that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong it **DECLINES** to issue a Certificate of Appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); 28 U.S.C. § 2253(c).

It is **SO ORDERED.**

Dated: August 19, 2021

Hon. Cathy Ann Bencivengo
United States District Judge